**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------X

**CV 03 6104**

WORLDHOMECENTER.COM, INC.,

Plaintiff, **COMPLAINT**

- against -

2003 Civ._____

ROHL LLC,

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
DEC 03 2003
BROOKLYN OFFICE

Defendant. **Jury Trial Demanded**
-------------------------------------------------X

WEXLER, J.

ORENSTEIN, M.J.

Plaintiff Worldhomecenter.com, by its undersigned attorney, for its Complaint, alleges as follows based upon personal knowledge as to its own acts and actions and upon information and belief as to all other matters:

## I.   PRELIMINARY STATEMENT

1.   Plaintiff Worldhomecenter.com, Inc. (WHC or Plaintiff) seeks an Order of this Court enjoining and prohibiting Defendant Rohl LLC (Rohl or Defendant) from engaging in unlawful acts in violation of New York General Business Law §§340 (the Donnelly Act), §349, §369-a and §369-b; 15 U.S.C. §§1 and 2 (the Sherman Act); 15 U.S.C. §1125(a) (the Lanham Act); and common law.  Plaintiff further seeks damages sustained as a result of Plaintiff's said unlawful conduct in an amount to be proven at trial, but believed to be in excess of $1,000,000.00, to be trebled pursuant to statute.

2.   This action is based upon misleading and deceptive statements made by Defendant that have injured Plaintiff and affect the public interest, and further upon Defendant's unlawful restraint of trade and minimum price maintenance.

## II.   **JURISDICTION**

3.      Personal jurisdiction herein over Defendant is derived by virtue of New York's long-arm statute, as codified in New York Civil Procedure Law and Rules §302 (a) and (b), in that (i) Defendant has transacted business in New York, (ii) Defendant regularly does or solicits business in New York, (iii) Defendant maintains a regional office in New York, and (iv) Defendant's alleged tortious conduct occurred in New York.

4.      This Court has subject matter jurisdiction over this mater pursuant to 28 U.S.C. §1337 in that it involves a federal question under the antitrust laws of the United States, particularly 15 U.S.C. §§1 and 2 (the Sherman Act); 15 U.S.C. §2230 (the Magnuson Moss Act); 15 U.S.C. §1125(a) (the Lanham Act).

## III.   **VENUE**

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because of the principal place of business of Plaintiff, because Defendant does a substantial amount of business in the State of New York, and because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## IV.   **PARTIES**

6.      Plaintiff is a corporation formed in the State of New York with its main office located at 303 Merrick Road, Lynbrook, New York.

7.      Upon information and belief, Defendant is a corporation formed in the state of California with main offices located at 1559 Sunland Lane, Costa Mesa, California, and with a regional office located in the State of New York.

8.      Various companies and individuals who are retailers and dealers, not made defendants in this complaint, have been induced to participate by and have participated with Defendant in certain of the offenses charged in this complaint, as described hereafter.

## V.      STATEMENT OF FACTS

### A.      Plaintiff's Business Operation

9.      WHC is an on-line retailer of home improvement products, selling to and servicing customers exclusively through its web site, known as "HomeCenter.com."

10.     Rohl manufactures and sells products for kitchen and bath including faucets, sinks, and shower fixtures exclusively to its authorized dealers.

11.     WHC purchases Rohl products for value from both exclusive and independent distributors for online resale to WHC's customers. Because of the relatively low overhead and maintenance associated with on-line retailing, and because WHC purchases a high volume of products from distributors, WHC is able to sell genuine Rohl products to consumers at sharp discounts.

12.     WHC makes no alterations to Rohl products or packaging. WHC provides customer service and assistance to purchasers of all Rohl products it sells. WHC employs industry professionals who possess great technical proficiency and can communicate with customers who experience problems with Rohl's products. WHC's industry professionals possess skills necessary to determine which products are appropriate for particular

systems, and can provide WHC's customers with advice regarding the installation of Defendant's products.

13.    WHC's sales force undergoes rigorous training, and is provided with the technical information necessary to properly and confidently sell Defendant's products. WHC's technical support staff is similarly trained and provided with information necessary to properly and confidently service and administer Defendant's products.

14.    WHC takes strident measures to ensure the proper handling and care of all products it sells, including Defendant's merchandise, to avoid mishandling. These measures include training sales and customer service representatives as to plumbing and lighting industry terms, common questions, and common product features. For instance, WHC's representatives learn through internal training classes which items require pairing with other necessary items. WHC's representatives regularly consult with industry veterans working at HomeCenter.com who have extensive experience in plumbing showroom sales.

15.    Due to the high quality of service and product delivered to its customers, WHC enjoys an excellent reputation with homeowners, general contractors, architects and builders. WHC provides its customers with complete products information, the best products, easy navigation, secure transactions, low pricing, a competitive return policy, and available free home delivery.   WHC is entrusted to resell home improvement products of such nationally known manufacturers such as Delta, Moen and Grohe.

16.    WHC's Internet-based business operation has several advantages for the consumer over the traditional "bricks and mortar" distribution model favored by

Defendant.   The main motivation online shoppers cite is convenience and pricing advantages. Customers shopping online also can:

- Save time by not going to a store

- Shop when stores are closed

- Avoid the holiday crowds

- Find better prices

- Find more products easily

- Find products not available in stores

- Easily compare prices

- Have gifts sent directly to recipient

- Avoid wrapping gifts

- Purchase from wish list

- Earn loyalty points

17.     The Internet market is growing exponentially. A report from Forrester Research, Inc. finds that a growing online consumer base, coupled with increases in new product categories and efforts by online retailers to optimize online shopping experiences, will spark significant growth in the industry over the next five years. The report also states that, although offline retail sales continue to struggle, e-commerce sales will increase at a steady 19 percent year-over-year growth rate, rising to $229.0 billion in 2008 from $95.7 billion in 2003. Online retail sales are projected to account for 10 percent of total U.S. retail sales by 2008.

18.     Forrester Research predicts that nearly 5 million new U.S. households will shop online in each of the next five years, with the total number of U.S. online shopping

households expected to reach 63 million by 2008. Product categories that historically have seen insignificant online growth are predicted to grow the fastest, according to Forrester. For the next five years, home goods are expected to outpace more traditional online categories like books and travel.

19.     In a press release dated March 19, 2003, the U.S. Census Bureau reported that online economic activity outperformed total economic activity in three of four major economic sectors measured between 2000 and 2001. Online retail sales grew 22 percent while total retail sales grew only 3 percent. Online sales by merchant wholesalers grew 12 percent while their total sales actually declined 1 percent.   E-shipments in manufacturing also fared better than total shipments between 2000 and 2001, with e-commerce declining only 4 percent, compared with a 6 percent decline in total manufacturing shipments.

20.     Despite the growing prevalence and availability of the e-commerce market, many manufacturers, like Rohl, have refused to deal with Internet resellers. Rohl has also discouraged its authorized distributors from selling to Internet resellers, the entirety of whom Rohl deems unable to handle and resell its product line.  In so doing, Rohl has deliberately and unlawfully manipulated the price of its goods.

21.     Rohl's purported reasons and justifications for avoiding the Internet are pure pretext. The true reason for Rohl's position is the illegal preservation of the artificial minimum price it sets for the resale of its products.  As a result, consumers are deprived of the attractions and conveniences of purchasing products on line.

**B.     Defendant's Unlawful Practices**

22.     At all times hereinafter mentioned, there has been a continuous and uninterrupted flow in interstate commerce of kitchen and bath products from Defendant's facilities in California and Texas to its authorized dealers throughout the United States. Upon information and belief, the unlawful activities of Defendant and its co-conspirators, as described herein, have been within the flow of, and have substantially affected, interstate commerce.

23.     As stated in its 2003 newsletter, Rohl's policy is to "*offer products in an environment of selective distribution that meets the market's needs and provides profitability to our customers and ourselves.*" To further its policy, Defendant actively discourages discounting, especially by online e-commerce resellers, and artificially maintains minimum prices for Rohl products, to the detriment of Plaintiff and consumers in general.

24.     Defendant's stated goal of "selective distribution" is a euphemism for vertical price maintenance. In implementing its policy of "selective distribution," Rohl wholly avoids resellers who undersell their products, thereby reducing profits for Rohl and its selected distributors. The market's true needs -- an efficient and cheaper method of distribution – are wholly secondary to Defendant's artificial maintenance of high prices for its products in the market. The end consumer of Rohl products is cheated the benefit of more efficient distribution system, like the Internet, which offers a more efficient, convenient and cheaper way to purchase Rohl products.

25.     Central to Plaintiff's marketing strategy is the superior service afforded by on-line retailers such as WHC. Few bricks and mortar operations can handle 22,000

visits a day, as WHC does. Each of those visitors enjoys uninterrupted browsing and full access to the entire Rohl product catalogue at the touch of a finger. With a few clicks of the visitor's mouse, Rohl products can be selected, paid for, shipped and received with minimal effort on the part of the consumer. After a sale, WHC's purchasers are afforded similarly convenient access to product service and support.

26.     Defendant's arbitrarily restrictive policy engulfs all Internet and e-commerce resellers, an entire global market. By refusing to deal with Internet resellers, by penalizing wayward authorized distributors and by policing infractions, Defendant has unlawfully restricted competition among resellers to the lasting detriment of consumers and independent resellers.

27.     Rohl has undertaken to illegally limit WHC's ability and opportunity to resell genuine Rohl products. These measures are unlawful in that the effect is to restrain trade, deceive consumers, fix retail prices and limit the flow of goods in commerce.

28.     An example of Defendant's unlawful activities in furtherance of minimum price restraints is its policy of arbitrarily denying warranty coverage to consumers who purchase Rohl products from unauthorized Internet resellers. The Rohl website (www.rohlhome.com) contains the following language, which threatens to punish consumers for purchasing Rohl products on the Internet:

> We would like you to purchase ROHL products through one of our displaying showrooms which provide product to see and touch, and personnel who can guide you and provide responsible customer service. There are unauthorized web sites that sell ROHL products but will not help you after you buy them. Therefore, ROHL does not warranty product purchased through unauthorized Internet only retailers. Unfortunately, our warranty is not valid unless the product is sold by a displaying ROHL showroom.

Please click here or on the showroom finder to locate your nearest displaying ROHL dealer. If you cannot find one near you please call ROHL at 1 (800) 777-9762 and we will direct you to a source that can help you.

29.     This retaliatory policy is contrary to established law (as described hereafter), which prohibits arbitrary warranty disclaimer.   Defendant offers no explanation or disclosure regarding the divergence between the law and the stated warranty disclaimer, which is unlawfully designed to intimidate consumers and coerce compliance with Rohl's goal of minimum price restraint.

30.     Rohl has tied its warranty policy directly to its pricing scheme.   In its distributor catalogue, Rohl states as follows:

**ROHL and Buying Faucets Online:**

ROHL recommends that its products be purchased only through decorative plumbing and supply and hardware showrooms and not over the Internet. Showrooms provide a place where you can see, touch and feel the quality of ROHL products in person and make your purchase decisions assisted by people who have experience with both the aesthetics and technical aspects of plumbing fittings and fixtures. These individuals are also responsible for assisting you after your purchase.

There are now various companies that sell faucets over the Internet. Some sites are operated by plumbing showrooms and can back up their online sales with the service of their brick and mortar business. Many others exist solely online and provide little, if any, service after the sale. Because of their minimal overhead what they may offer is better pricing than the showrooms. These businesses capitalize on the investments made by brick and mortar showrooms, where consumers make their choices and get the advice they need, by tempting these consumers to make their actual purchases online. ROHL finds this type of business model unreliable and unethical; therefore, our warranty is not valid unless the product is sold by a displaying ROHL showroom.

31.     It is the after-market pricing and underselling of its products that concerns Rohl most, not the level of service afforded by Internet-only resellers. The "unreliable

and unethical" business practices alleged by Rohl are not true, either, as it is common for consumers to shop and compare prices online first, and then proceed to a showroom to make an actual sale.

32.     Defendant's purported business justification for its prohibited conduct – that Plaintiff and other internet resellers cannot adequately sell and service Rohl products -- is pure fabrication. Contrary to Rohl's assertions, WHC does provide accounts, descriptions and specifications for every Rohl product it sells, so that a prospective customer can properly identify the item sought; WHC does employ personnel who can ably guide consumers and provide reliable customer service; WHC does help consumers after purchase.

33.     Rohl should be held accountable for the deliberate misinformation promulgated and disseminated about internet resellers of Rohl products, of which Plaintiff is most prominent.

34.     Defendant's blanket denial of warranty coverage to any Internet purchaser is an indefensible indictment of an entire economic distribution system.  In essence, Defendant is prohibiting trade and service of its product in the global geographic market known as the Internet.   Defendant's purported business necessity justification for avoiding e-commerce transactions altogether is pure pretext, and without basis in law or fact.  Indeed, even Rohl operates an elaborate web-site that takes advantage of many of the conveniences offered by the web.

35.     Upon information and belief, Defendant knowingly and willfully published its warranty disclaimer information and policy in an unlawful attempt, among other things, to establish an artificial minimum price for the distribution and sale of its

10

products in all markets.    In order to protect its exclusive distributors from fair competition, Rohl has undertaken to completely ban Internet sales of its product. This ban applies even to Rohl's authorized resellers.

36.    The publication of an unlawful warranty disclaimer is symptomatic of Rohl's overarching campaign to control the market for its products.  Beginning at least as early as January 1998, and continuing through the present, Defendant and its co-conspirators have engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of 15 U.S.C. §1 (the Sherman Act).

37.    In furtherance of this combination and conspiracy, Defendant committed numerous offenses, including, upon information and belief:

(a)    Obtaining agreements from dealers to maintain the minimum resale price as a condition of receiving Rohl products from Defendant.

(b)    Refusing to deal with retailers who would not submit to Defendant's unlawful demands;

(c)    Actively discouraging authorized resellers from selling Defendant's products to unauthorized resellers; and

(d)    Publishing the unlawful warranty disclaimer described herein.

38.    This unlawful combination and conspiracy will continue or may be renewed unless the Court grants the relief requested in this complaint.  The combination and conspiracy has consisted of a continuing agreement, understanding and concert of action among the defendant and its co-conspirators to fix and maintain the resale price of Defendant's products at the amount set by Defendant.

39.     Defendant can state no legitimate reasons to limit its warranty coverage, or to control resale prices of its products at an artificially high level. There is nothing a traditional "bricks and mortar" business operation can offer that a web site cannot provide.

40.     Further evidence of price maintenance lies in the distinctions between prices of products offered by authorized resellers, and those offered by unauthorized Internet resellers.   Prices for Rohl products online are consistently lower than those offered by bricks and mortar businesses.

41.     Rohl promulgates and operates a Tiered Pricing Structure governing resale of its products.  Upon information and belief, Rohl requires its authorized resellers to sell to Internet businesses at a higher rate than other businesses for the same products.

42.     Defendant's unlawful conduct is in violation of common and statutory law in that said conduct

(a)     constitutes an unlawful disclaimer of warranty;

(b)     constitutes vertical price fixing and unlawful restraint of trade;

(c)     constitutes deceptive and misleading trade practices;

(d)     constitutes commercial disparagement; and

(e)     tortiously interferes with contracts between Plaintiff and its customers.

43.     Defendant's unlawful conduct has had the following effects, among others:   (a) resale prices of Defendant's products have been artificially fixed and maintained; and (b) competition in the sale and servicing of Defendant's products by dealers has been restrained, suppressed and eliminated.

12

44.    As a further direct result of Defendant's unlawful activities, Plaintiff has sustained damages as sought herein.

## FIRST CAUSE OF ACTION
### (Violation of NY General Business Law § 349)

45.    Plaintiff reiterates and repeats the allegations set forth in paragraphs 1 through 44 as though fully stated hereafter.

46.    Defendant's refusal to honor warranties for its products is contrary to New York General Business Law §369-b, and constitutes a false and deceptive trade practice, in violation of General Business Law §349.

47.    Plaintiff is an injured party as contemplated by General Business Law §349.

48.    Defendant's false and deceptive acts unfairly discourage and dissuade consumers from purchasing merchandise from Plaintiff, and unlawfully penalize Plaintiff's customers who purchase Rohl products, causing Plaintiff loss of profits, loss of established business dealings and prospective business opportunities, and damage to reputation.

49.    Defendant's refusal to honor warranties for its products further causes damage to the public interest, as consumers who purchase Rohl products legally through unauthorized resellers are unlawfully deprived of the warranty normally accompanying Rohl products.

50.    As a result of the actions of Defendant, Plaintiff has suffered injury, including without limitation loss of existing business, business interference and damage

13

to reputation, and has sustained damages in an amount to be proven at trial, but in no event less than One Million Dollars ($1,000,000.00), trebled pursuant to statute.

## SECOND CAUSE OF ACTION
### (Violation of Donnelly Act
### NY General Business Law §§ 340)

51.     Plaintiff reiterates and repeats the allegations set forth in paragraphs 1 through 50 as though fully stated hereafter.

52.     Defendant polices its price fixing arrangements by denying warranty service to products sold by unauthorized dealers. Such practice is a direct violation of New York General Business Law §369-b.

53.     Defendant unlawfully furthers its vertical price-fixing scheme, in violation of New York General Business Law §369-a, through the following conduct and policies:

(a)     Defendant has obtained agreements from dealers to maintain the minimum resale price as a condition for receiving Rohl products from Defendant.

(b)     Defendant refuses to deal with retailers who do not submit to Defendant's unlawful demands, including participation in a mandatory tiered pricing structure for the resale of Rohl products; and

(c)     Defendant actively discourages authorized resellers from selling Defendant's products to unauthorized resellers.

54.     By unlawfully denying warranty service to purchasers of Rohl products from unauthorized resellers, and by vertically restraining the price for its products in the marketplace, Defendant has restrained trade in violation of General Business Law §340.

Defendant's conduct constitutes a resale price maintenance scheme that is per se unlawful.

55.     The actions of Defendant set forth above constitute contracts, agreements, arrangements or combinations whereby competition or the free exercise of activity in the conduct of the business or trade of Plaintiff is restrained. Such contracts, agreements, arrangements or combinations restrain competition, in violation of General Business Law §340.

56.     Such contracts, agreements, arrangements or combinations will continue unless preliminarily and permanently enjoined and restrained by this Court.

57.     Plaintiff has no adequate remedy at law.

58.     Plaintiff respectfully requests judgment:

(a)     decreeing that Defendant Rohl LLC has combined and conspired to restrain interstate trade and commerce of its products in violation of General Business Law §340, that the contracts between Defendant and its authorized dealers are void, and that Rohl's purported warranty disclaimer is void and unenforceable;

(b)     enjoining and restraining Defendant, its officers, directors, agents, employees and successors, and all other persons acting or claiming to act on Defendant's behalf, from:

    (i)     continuing, maintaining or renewing the combination and conspiracy alleged herein in any manner, directly or indirectly;

    (ii)    engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect; and

(iii)   adopting or following any practice, plan, program or device having a similar purpose and effect.

59.     As a result of the actions of Defendant, Plaintiff has sustained damages in an amount to be proven at trial, but in no event less than One Million Dollars ($1,000,000.00), trebled pursuant to statute.

## THIRD CAUSE OF ACTION
### (Violation of Sherman Act
### 15 U.S.C. §1)

60.     Plaintiff reiterates and repeats the allegations set forth in paragraphs 1 through 59 as though fully stated hereafter.

61.     Defendant's practice of artificially maintaining minimum prices is an unlawful restraint of trade in violation of The Sherman Act (15 U.S.C. §1 et seq.).

62.     Defendant unlawfully furthers its vertical price-fixing scheme, in violation of New York General Business Law §369-a, through the following conduct and policies:

(a)   Defendant has obtained agreements from dealers to maintain the minimum resale price as a condition for receiving Rohl products from Defendant.

(b)   Defendant refuses to deal with retailers who do not submit to Defendant's unlawful demands, including participation in a mandatory tiered pricing structure for the resale of Rohl products; and

(c)   Defendant actively discourages authorized resellers from selling Defendant's products to unauthorized resellers.

63. By unlawfully denying warranty service to purchasers of Rohl products from unauthorized resellers, and by vertically restraining the price for its products in the marketplace, Defendant has restrained trade in violation of the Sherman Act (15 U.S.C. §1 et seq.). Defendant's conduct constitutes a resale price maintenance scheme that is per se unlawful.

64. The actions of Defendant set forth above constitute contracts, agreements, arrangements or combinations whereby competition or the free exercise of activity in the conduct of the business or trade of Plaintiff is restrained. Such contracts, agreements, arrangements or combinations restrain competition, in violation of the Sherman Act, 15 U.S.C. §1 et seq.

65. Such contracts, agreements, arrangements or combinations will continue unless preliminarily and permanently enjoined and restrained by this Court.

66. Plaintiff has no adequate remedy at law.

67. Plaintiff respectfully requests judgment:

(a) decreeing that Defendant Rohl LLC has combined and conspired to restrain interstate trade and commerce of its products in violation of 15 U.S.C. §1, that the contracts between Defendant and its authorized dealers are void, and that Rohl's purported warranty disclaimer is void and unenforceable;

(b) enjoining and restraining Defendant, its officers, directors, agents, employees and successors, and all other persons acting or claiming to act on Defendant's behalf, from:

      (i) continuing, maintaining or renewing the combination and conspiracy alleged herein in any manner, directly or indirectly;

17

    (ii)     engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect; and

    (iii)    adopting or following any practice, plan, program or device having a similar purpose and effect.

68.    As a result of the actions of Defendant, Plaintiff has sustained damages in an amount to be proven at trial, but in no event less than One Million Dollars $1,000,000.00), trebled pursuant to statute.

**FOURTH CAUSE OF ACTION**
**Lanham Act Violation**
**15 USC §1125(a)**

69.    Plaintiff reiterates and repeats the allegations set forth in paragraphs 1 through 68 as though fully stated hereafter.

70.    Defendant's statements contained in the published warranty disclaimers, including the statement that "(t)here are unauthorized web sites that sell ROHL products but will not help you after you buy them," constitute false or misleading factual representations of the nature, characteristics, or qualities of Plaintiff's goods and services.

71.    Defendant used the false or misleading representations in commerce, and in connection with Plaintiff's goods and services.

72.    Defendant made the false or misleading representations in the context of commercial advertising or commercial promotion.

73.    Defendant's actions made Plaintiff believe that Plaintiff was likely to be damaged by such false or misleading factual representations.

74.     As such, Defendant's actions constitute a violation of the Lanham Act, 15 U.S.C. §1125(a).

75.     As a result of the actions of Defendant, Plaintiff has sustained damages in an amount to be proven at trial, but in no event less than One Million Dollars ($1,000,000.00), trebled pursuant to statute.

### FIFTH CAUSE OF ACTION
### Trade Libel

76.     Plaintiff reiterates and repeats the allegations set forth in paragraphs 1 through 75 as though fully stated hereafter.

77.     Defendant's statements contained in the published warranty disclaimers, including the statement that "(t)here are unauthorized web sites that sell ROHL products but will not help you after you buy them," constitute the tort of trade libel.

78.     Defendant's statements are injurious falsehoods consisting of knowing publication of false matter derogatory to Plaintiff's business, and of a kind calculated to prevent others from dealing with Plaintiff's business or otherwise interfering with Plaintiff's relationship with others to its detriment.

79.     As a result, Plaintiff has incurred and sustained special damages, in the form of lost dealings and opportunities, in an amount to be proven at the trial hereof.

### SIXTH CAUSE OF ACTION
### Tortious Interference With
### Prospective Business Relations

80.     Plaintiff reiterates and repeats the allegations set forth in paragraphs 1 through 79 as though fully stated hereafter.

81.     Defendant's illegal acts described above constitute wrongful interference and encroachment upon the prospective business relations between and among Plaintiff and its customers.

82.     Defendant's illegal acts further constitute wrongful means and acts that were the proximate cause of the rejection of the Plaintiff's proposed contractual relations.

83.     Defendant's illegal acts have caused and continue to cause Plaintiff irreparable harm and great financial loss.

84.     As a result of the actions of Defendant, Plaintiff has sustained damages in an amount to be proven at trial, but in no event less than $1,000,000.00.

WHEREFORE, Plaintiff prays for judgment:

(a)     Decreeing that Defendant Rohl LLC has combined and conspired to restrain interstate trade and commerce of its products in violation of the Sherman and Donnelly Acts, that the contracts between Defendant and its authorized dealers are void, and that Rohl's purported warranty disclaimer is void and unenforceable;

(b)     Enjoining and restraining Defendant, its officers, directors, agents, employees and successors, and all other persons acting or claiming to act on Defendant's behalf, from:

      (i)     continuing, maintaining or renewing the combination and conspiracy alleged herein in any manner, directly or indirectly;

      (ii)    engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect; and

      (iii)   adopting or following any practice, plan, program or device having a similar purpose and effect.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: New York, New York
November 24, 2003

LAWRENCE R. LONERGAN, P.C.
Attorneys for Plaintiff

Lawrence R. Lonergan, Esq. [4744]
275 Seventh Avenue, 25th Floor
New York, New York 10001
(212) 206-9071

TO:   ROHL LLC
1559 Sunland Lane
Costa Mesa, California 92626-1514
714-557-1933

22